IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARKET STREET SECURITIES, INC. AND STEPHEN CHESELDINE, Plaintiff, v. NASDAQ OMX PHLX LLC, Defendant. | CIVIL ACTION NO. 12-1304 |

October 16, 2012                                                                              Anita B. Brody, J.

### MEMORANDUM

Plaintiffs Stephen Cheseldine and Market Street Securities, Inc.[1] seek declaratory relief to advise them of the consequences of refusing to pay a disciplinary fine that Defendant NASDAQ OMX PHLX LLC ("the Exchange"), formerly known as the Philadelphia Stock Exchange, may levy against them. Defendant moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction because the action is not ripe. Because there is no actual controversy present at this time, I will grant Defendant's motion to dismiss.

I.   BACKGROUND

Plaintiff Stephen Cheseldine is the sole officer and shareholder of plaintiff Market Street Securities, Inc., a securities trading business that was a member firm of the Exchange. In February 2010, the Exchange's Investigations Department informed Cheseldine through a "Wells Letter" that it believed he had violated a Securities and Exchange Commission regulation against "short trading" stocks between August 2006 and August 2007. The Investigation Department transferred the investigation to the Financial Industry Regulatory Authority ("FINRA"). FINRA offered Cheseldine a settlement proposal to resolve the matter. Cheseldine

---

[1] Stephen Cheseldine is the sole officer and shareholder of Market Street Securities. For the remainder of this opinion I will refer only to Stephen Cheseldine although the analysis also applies to Market Street Securities.

1

has not yet accepted the proposal. He believes that if he rejects the proposal, the Exchange will impose a disciplinary fine on him.

To aid his decision, Cheseldine wants to know what will happen if he refuses to pay the fine. Based on Exchange By-Law Article XIV, Section 14-5, he anticipates that a failure to pay the fine would result in a limited suspension from the Exchange. He is concerned, however, that the Exchange may instead take legal action against him for evading the fine based on a 2008 decision by the Pennsylvania Court of Common Pleas that it had subject matter jurisdiction to hear this type of collection action. *See NASDAW OMX PHLX, Inc. v. PennMont Sec.*, March Term 2008, No. 5995 (Pa. Ct. Com. Pl. Phila. Co.) (Order & Op., dated Oct. 5, 2009) (affirming the Exchange's right to collect amounts owed by members through civil actions).[2] This ruling is contrary to a Second Circuit opinion finding that FINRA lacks the authority to bring actions in court to collect disciplinary fines. *See Fiero v. FINRA,* 660 F.3d 569 (2d Cir. 2011). Cheseldine seeks declaratory judgment as to which ruling this district will adopt. Such clarification will help him decide if he should accept the settlement proposal or take his chances evading a disciplinary fine.

The Exchange moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the grounds that the action is not ripe, and that it is an improper use of the Declaratory Judgment Act.

## II.     LEGAL STANDARD

Federal courts have limited jurisdiction. Therefore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P.12(h)(3). "Where a defendant's 12(b)(1) motion facially attacks a complaint, the court must take all

---

[2] This decision is currently on appeal to the Pennsylvania Superior Court. *See NASDAQ OMX PHLX LLC v. PennMont Sec.*, 3319 EDA 2009 (Pa. Super. Ct.).

allegations in the complaint as true." *Mortensen v. First Fed. Sav. & Loan* Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The burden is on the plaintiff to prove the existence of jurisdiction. *Id.*

### III.   DISCUSSION

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration . . . ." 28 U.S.C. § 2201(a). Jurisdiction is dependent on the existence of a "case or controversy" as required by Article III of the United States Constitution. To present a justiciable case or controversy, a case must be ripe for review. *See Artway v. Attorney Gen.*, 81 F.3d 1235, 1246-47 (3d Cir. 1996). The rationale for this requirement is "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (*citing Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967)).

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Yet "ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." *Pittsburgh Mack Sales & Serv. Inc. v. Int'l Union of Operating Eng'rs, Local Union NO. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (citation omitted). This task is particularly difficult in declaratory judgment actions because they are often sought before a completed injury has occurred. *Id.* The Third Circuit uses a three part test to evaluate whether an action for declaratory judgment is ripe, examining: 1) the adversity of the parties' interest, 2) the conclusiveness of the judicial judgment, and 3) the practical help, or utility of that judgment. *Step-Saver Data Systems, Inc. v. Wyse Tech.,* 912 F.2d 643, 647 (3d Cir. 1990). Because Cheseldine's action fails to fit these requirements, his case is unripe and I must dismiss it for lack of subject matter jurisdiction.

1. **Adversity of Interest**

"[A] potential harm that is 'contingent' on a future event occurring will likely not satisfy [the adversity of interest] prong of the ripeness test." *Pittsburgh Mack*, 580 F.3d at 190 (*citing Step-Saver*, 912 F.2d at 647-48). The party seeking review need not have suffered a "completed" harm, but there must be a substantial threat of real harm that remains throughout the litigation. *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1463 (3d Cir. 1994). For instance, a declaratory judgment action is ripe if "a regulation requires immediate and significant change in the plaintiffs' conduct of their affairs." *Abbott Labs.*, 387 U.S. at 153. If, however, intervening events would remove the potential for harm, the controversy becomes speculative. *Presbytery*, 40 F.3d at 1463.

Cheseldine wants to know if FINRA can take him to court to collect an unpaid fine. This scenario is contingent upon numerous steps. First, no hearing has taken place addressing his violation. Second, no fine has been levied against him. Third, Cheseldine has not appealed or refused to pay such a fine. Fourth, the Exchange has not sought to enforce this future fine.

In *Fiero*, the Second Circuit ruled on a case where FINRA fined a member firm and brought an enforcement action against the member firm when it refused to pay the fine. *Fiero,* 660 F.3d at 572. Cheseldine argues that because the action in *Fiero* was ripe, his action is also ripe. However, Cheseldine concedes that "[u]nlike *Fiero*, the Exchange has not yet entered an order imposing sanctions against Cheseldine. Without an order imposing sanctions, a collection action cannot begin . . . ." Pl.'s Reply 7. He argues that "but for the very slight difference in the stage…of the enforcement proceedings…the *Fiero* case would be authority for holding that there is subject matter jurisdiction . . . ." Pl.'s Reply 6-7. This is absolutely correct. But subject matter jurisdiction hinges on the "slight difference in the stage" between *Fiero* and this action.

In addition, Cheseldine has not modified his behavior based on an adversity of interest.[3] Rather, he wishes for the Court to advise him before he decides how to act, specifically to help him "perform an appropriate cost-benefit analysis." Compl. ¶ 39. It is not the province of the federal courts to provide such assurances or advice. *See PSA, LLC v. Gonzales*, 461 F.Supp.2d 351, 357 (E.D.Pa. 2006) (noting that "[t]he Declaratory Judgment Act does not entitle entrepreneurs to ask a federal court 'which of these business models is least likely to get me in trouble' or 'how can I modify my business to avoid prosecution.'"). As a result, this action fails to present sufficient adversity of interest between the parties.

### 2. Conclusively

A declaratory judgment is conclusive if it definitively decides the rights of the parties. *Step Saver,* 912 F.2d at 649 n.9. If a declaratory judgment is based on a contingency, however, it fails to change the parties' legal status, and becomes an exercise in futility. *Id.* at 649. Even if Cheseldine received the declaratory judgment he desires, it would not affect his rights unless a fine was levied against him, he refused to pay it, and the Exchange sought to bring a collection action against him. If this string of events does not occur, the declaratory judgment would be futile.

Furthermore, a declaratory judgment from this Court at this time would be inconclusive because Cheseldine asks this Court to overturn a Pennsylvania Court of Common Pleas decision currently on appeal.[4] Federal district courts do not have appellate jurisdiction over state court

---

[3] Cheseldine attempts to conflate his case to *Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006). Prior to *Surrick*, the Pennsylvania Supreme Court found that an attorney suspended from practice in Pennsylvania state courts, but reinstated to practice before the Eastern District, was barred from opening a law office in the state. Surrick was an attorney in the same situation and sought declaratory relief and a preliminary injunction enjoining the Office of Disciplinary Counsel from disciplining him when he opened an office. *Id.* at 524. The Court held his claim was ripe because "Surrick's fear of sanctions ha[d] actually deterred him from opening an office," and "the threat of sanctions [was] sufficiently real and substantial." *Id.* at 528. Here, more steps must take place before Cheseldine's harm becomes real. He also has not modified his behavior.

[4] Cheseldine was not a party to the state court action.

decisions. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284-85 (2005). This is a task assigned to the Pennsylvania Superior Court. Therefore, a judgment issued from this Court at this time would necessarily be inconclusive.

### 3. Utility

The purpose of the Declaratory Judgment Act is to provide useful judgments that clarify legal relationships so that parties "make responsible decisions about the future." *Step-Saver,* 912 F.2d at 649. A judgment has utility if it affects the parties' plans of action. *Id.* There is no doubt that a declaratory judgment would be useful to Cheseldine and affect his plan of action. Yet the judgment would only serve to clarify a potential future legal relationship between the parties. The mere fact that a declaratory judgment would be useful to help Cheseldine make his decision is insufficient to overcome the fact that no actual controversy exists yet between the parties.

## IV. CONCLUSION

For the reasons set forth above, I will grant Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

/s/ Anita B. Brody
_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:              Copies **MAILED** on _____ to: